UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOV LEVINE<br><br>*Plaintiff,*<br><br>v.<br><br>THE READER'S DIGEST ASSOCIATION, INC.<br><br>*Defendant.* | Civil Action: 05-cv-01163 (RMC) |

PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S
MOTION TO TRANSFER VENUE

---

INTRODUCTION

Plaintiff is a 59-year-old American citizen who worked for the Swiss subsidiary of the Reader's Digest Association, Inc., for 31 years in Zurich, Switzerland, and was suddenly fired after receiving exemplary performance ratings during his entire tenure. His permanent replacement was 25 years old. Plaintiff is "a citizen of the United States employed by an employer in a workplace in a foreign country" within the meaning of 29 U.S.C. § 630(f), and is protected by the Age Discrimination in Employment Act. His federal age-discrimination complaint may, therefore, be brought in the United States in a United States District Court even though (1) all relevant conduct occurred in Switzerland and not within any State, (2) all the principal witnesses, including the plaintiff, will be traveling to the United States from foreign countries, and (3) virtually all relevant documents are located in Europe.

No jurisdiction within the United States is the plaintiff's "home forum." Nor is there any jurisdiction within the United States that has a "substantial factual nexus" to the facts alleged in plaintiff's complaint. The defendant, being a United States corporation, has headquarters in the United States, but there is no suggestion that, prior to the initial notification given to the plaintiff regarding termination of his employment, anyone at the defendant's headquarters was involved in evaluating plaintiff's job performance. Plaintiff has chosen to bring his action in the District of Columbia because (1) his attorney (who is also his first cousin) has practiced for the past 35 years in the District of Columbia, (2) his case will progress much more quickly in this District than in the Southern District of New York, where the average docket per federal judge is more than twice as heavy as the average docket in this District, (3) the presence of foreign embassies in this District will facilitate securing evidence that plaintiff may need from Zurich or other foreign locations, and (4) this Court, being in the Nation's Capital, will deal comfortably and expeditiously with the foreign aspects of this litigation.

The Reader's Digest would prefer to have the case tried in the Southern District of New York because its principal counsel has his office there and defendant has its headquarters in New York. We agree that the case could have been filed in the Southern District of New York. But defendant does not contest that this District is also a permissible venue. Defendant's Motion To Transfer Venue ignores the "strong presumption" that the Supreme Court has recognized in favor of a plaintiff's "choice of forum." It also fails to take account of the reasons that have been enumerated above – and are discussed in the body of this Memorandum – that support venue in the District of Columbia. The reasons given by the defendant to transfer the case to the Southern District of New York are exceedingly thin and surely do not outweigh the Supreme Court's "strong presumption" and the factors supporting venue in this District.

# I.

## THE "STRONG PRESUMPTION" IN FAVOR OF A PLAINTIFF'S "CHOICE OF FORUM" IS OVERCOME ONLY IF PRIVATE AND PUBLIC INTEREST FACTORS "CLEARLY POINT" TO TRIAL IN SOME OTHER FORUM

A. <u>A Plaintiff's "Choice of Forum" Is Entitled to Great Respect.</u>

The Supreme Court said in the landmark case of *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." And in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265-266 (1982), the Court reaffirmed that fundamental proposition when it declared: "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."

Courts in this District have acknowledged the rule of the Supreme Court's *Gilbert* and *Reyno* decisions with somewhat different verbal formulations. In *Thayer/Patricof Education Funding, L.L.C. v. Pryor Resources, Inc.*, 196 F. Supp. 2d 21 (D.D.C. 2002) (Bates, J.), a District Court cited the D.C. Circuit's 1980 decision in *Pain v. United Technologies Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980), and said: "Defendants bear a 'heavy burden' in asking this Court to overturn plaintiffs' choice of forum." A formulation that is frequently quoted in cases concerning requests for transfer under 28 U.S.C. § 1404(a) is Judge Barrington Parker's conclusion in *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987): "Plaintiff's choice of forum is given paramount consideration and the burden of demonstrating that an action should be transferred is on the movant."

3

More recently, courts in this District have said that "plaintiff's choice of forum is accorded substantial deference in the venue analysis." *California Farm Bureau Federation v. Badgley*, 2005 WL 1532718 (D.D.C. 2005) (Lamberth, J.); see also *Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (Bates, J.) ("Courts give considerable deference to the plaintiff's choice of forum."); *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 141 (D.D.C. 2004) (Urbina, J.) ("courts generally must afford substantial deference to the plaintiff's choice of forum"); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67 (D.D.C. 2003) (Urbina, J.) (same); *The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000) (Roberts, J.) ("plaintiff's choice is afforded substantial deference"); *Ross v. United States*, 1987 WL 33514, p. 3 (D.D.C. 1987) (Gasch, J.) ("Courts have given substantial weight to plaintiffs' privilege of choosing the forum in considering transfer motions.").

### B. <u>Plaintiff Has No "Home Forum" and There Is No United States Venue That Has a "Factual Nexus" to the Controversy.</u>

The defendant argues that the usual rule giving a plaintiff's choice of forum great weight should not apply because the District of Columbia "has no meaningful ties to the controversy" and it is not the plaintiff's "home forum." Defendant's Memorandum of Law, pp. 5-6. There are, to be sure, decisions in this District and elsewhere that have noted that the usual obligation of deference to the plaintiff's choice of forum does not apply when the plaintiff chooses a forum that is not his own residence and that has no factual relation to the controversy. E.g., *Trout Unlimited v. United States Dep't of Agriculture*, 944 F. Supp. 13, 17 (D.D.C. 1996). But the defendant ignores the fact that in the reported cases that fail to apply the usual rule of deference to the plaintiff's choice, the proposed transferee district is, as in the *Trout Unlimited* case, a "forum with which plaintiffs have substantial ties and where the subject matter of the

4

lawsuit is connected to that state." 944 F. Supp. at 17. See also *Schmidt v. American Institute of Physics,* 322 F. Supp. 2d 28 (D.D.C. 2004) (transfer to district of plaintiff's employment where "a majority of material events occurred" and where all relevant documents are located); *McClamrock v. Eli Lilly and Co.,* 267 F. Supp. 2d 33 (D.D.C. 2003) (transfer to plaintiff's home district where plaintiff's injuries occurred); *DeLoach v. Philip Morris Cos., Inc.,* 132 F. Supp. 2d 22 (D.D.C. 2000) (transfer to plaintiffs' home district where litigation has major impact); *Reiffin v. Microsoft Corp.,* 104 F. Supp. 2d 48 (D.D.C. 2000) (transfer to plaintiff's home state where underlying infringement litigation was pending); *Northwest Forest Resource Council v. Babbitt,* 1994 WL 908586 (D.D.C. 1994) (transfer to district with ongoing litigation). A court may, in other words, give little weight to the plaintiff's choice of forum when there exists another forum in the United States that is the plaintiff's "home forum" and when there is an alternative forum that is the true site of the facts that have given rise to the controversy.

There is no such comparable transferee district in this case. The plaintiff has resided for 31 years in Zurich, Switzerland. He has no "home district" in the United States. Virtually all relevant facts bearing upon the age discrimination claim occurred in Zurich or in other Reader's Digest offices in Europe. Hence there is no venue within the United States which has a "nexus" to the facts in issue. In these circumstances, there is no reason to discount or disregard the venue selected by the plaintiff that should be the presumptive location of this litigation under the legal standard articulated by the Supreme Court in *Gilbert* and *Reyno*.

Nor can it be argued that the interference-with-contract claim that is the Third Claim for Relief in plaintiff's complaint occurred in New York. The contract with which the defendant interfered was one that had been concluded in Zurich by its subsidiary. Indeed, that contract is now the subject of ongoing litigation in the Swiss courts. Hence even if the decision to interfere

with that contract was made from Reader's Digest headquarters in New York, the actual interference occurred in Switzerland.

### C.    This Is Not a Case of Impermissible Forum-Shopping.

A plaintiff's choice of forum in which to initiate a lawsuit is subject to judicial scrutiny to avoid "forum shopping by plaintiffs." *Pain v. United Technologies Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980). If a plaintiff chooses a venue to force a trial at a "most inconvenient place for an adversary" (*id.*), a court may prevent such abuse by transferring the case to a more appropriate venue. See *Mikkilineni v. Penn Nat'l Mutual Cas. Ins. Co.*, 271 F. Supp. 2d 142, 151 (D.D.C. 2003).

That is plainly not this case. For the reasons enumerated in this Memorandum, the plaintiff, an individual who has been precipitously deprived of his livelihood, has chosen a reasonable venue that creates minor inconvenience to the defendant, a major multi-billion-dollar international corporate behemoth. There is no reason to force the "balance of inconvenience" on the plaintiff by denying him his choice of forum and requiring him to litigate in the State where the corporation maintains its headquarters.

## II.

### THE PRIVATE-INTEREST FACTORS
### FAVOR THE PLAINTIFF'S CHOSEN FORUM

The reported judicial decisions enumerate six "private-interest factors" that bear upon the decision on a motion to transfer venue under Section 1404(a). These are: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to

sources of proof. *Sheldon v. National Railroad Passenger Corp.*, 355 F. Supp. 2d 174, 178 (D.D.C. 2005), quoting from *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998). After weighing these considerations, courts in this District have frequently refused to grant motions to transfer venue under Section 1404(a). *E.g.*, *In re Vitamins Antitrust Litigation*, 263 F. Supp. 2d 67 (D.D.C. 2003); *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124 (D.D.C. 2001); *The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000); *Paley v. Estate of Ogus,* 20 F. Supp. 2d 83, 92-94 (D.D.C. 1998); *Beals v. SICPA Securink Corp.,* 1994 WL 236081 (D.D.C. 1994).

### A. The Plaintiff's Choice of Forum Prevails Over the Defendant's If Neither Is the Location of the Controversy.

Neither the District of Columbia (the plaintiff's choice) nor the Southern District of New York (the defendant's choice) is the location where the controversy arose. Nor are the primary witnesses to the discrimination claim located in either District. In these circumstances, the fact that a defendant would prefer to be sued where its headquarters are located should carry very little weight. The Judicial Code permits a plaintiff who has no United States residence to sue a resident of the United States in venues other than the defendant's residence.

### B. The Claim Arose in a Foreign Country and in Neither Chosen District.

Plaintiff's complaint alleges that his employment was illegally terminated because of his age by the Reader's Digest subsidiary in Switzerland. Both the plaintiff and the superiors who made the decision to replace him with a 25-year-old were, at all relevant times, in Switzerland or in Stuttgart, Germany, to which the Swiss subsidiary of Reader's Digest reported. Hence the discrimination claim arose in Europe and not in any venue within the United States. The claim

thus arose "elsewhere" than in the defendant's chosen venue or in the plaintiff's chosen venue. It arose in a location where there is no United States District Court. There is no basis, on this account, to transfer this case to a venue where the claim arose.

    C.    **<u>Plaintiff, an Unemployed Individual Represented by His Cousin and a Two-Member Law Firm, Would Be More Inconvenienced by Proceedings in the Southern District of New York than Defendant, a Major Corporation Represented by a Large Law Firm, Would Be Inconvenienced by Proceedings in the District of Columbia.</u>**

In evaluating the convenience-of-the-parties factor, the Court should consider that there is virtually no inconvenience to a major multi-billion dollar corporation such as the Reader's Digest for its employees and attorneys to travel from New York in a brief trip by rail or plane to the District of Columbia for discovery or court appearances. Indeed, it appears that the defendant's law firm has a permanent office in the District of Columbia.

By contrast, the cost of attorneys' travel from the District of Columbia to New York for an unemployed individual such as the plaintiff is a major undertaking. Moreover, the burden imposed on a two-member law firm when one of its attorneys must spend several hours in travel to and from New York is a significantly greater burden on the law practice than if counsel is able to perform his duties where his office is located. As is more fully explained in the Declaration of Nathan Lewin (Exhibit 1), it would be significantly burdensome and inconvenient to engage in motion practice and discovery in the Southern District of New York.

Although the convenience of counsel is frequently said to be a factor that has only slight weight (*Standard Office Sys. Of Fort Smith, Inc. v. Ricoh Corp.*, 742 F. Supp. 534, 537 (D. Ark. 1990)), in a case of this kind it should be given greater importance. As described in the Declaration of Nathan Lewin (Exhibit 1), the likelihood that the plaintiff could pursue his ADEA

claim with a New York attorney is very small. The difficulties an unemployed resident of Switzerland would have in finding and retaining counsel in New York are obvious. Undersigned counsel has undertaken this case in large part because of familial considerations. Neither the plaintiff nor his counsel should be excessively burdened in seeking justice under United States law for an American citizen who has been suddenly and unlawfully deprived of his livelihood.

D. **Since Virtually All Witnesses Will Travel from Europe, There Is No Greater Inconvenience in the District of Columbia Than in the Southern District of New York.**

The defendant blithely skips over "the Swiss and/or German witnesses who are familiar with plaintiff's work performance in Switzerland" and asserts that the *only* other witnesses are Reader's Digest employees who worked at the corporate headquarters in New York. Defendant's Memorandum, p. 8 (emphasis original). The "Swiss and/or German witnesses" – which describes *all* the plaintiff's witnesses – are, of course, the heart of the case. Their testimony will determine whether the defendant's Swiss subsidiary and its employees, wanting to replace a senior employee with someone much younger, concocted a pretextual false reason for terminating the services of an employee who had received outstanding performance reports during 31 years of service in Zurich. Compare *Pyrocap Int'l Corp. Ford Motor Co.*, 259 F. Supp. 2d 92 (D.D.C. 2003) (witnesses with personal knowledge unavailable in the District of Columbia).

Indeed, it appears from highly redacted documents that have been provided by Reader's Digest to a Swiss court that even the purportedly "independent" judgments being made by Reader's Digest officers in New York at the time plaintiff was discharged were, in fact, being cleared and approved by the defendant's European personnel *before* they were sent to the plaintiff. The plaintiff and his counsel believed from the content of telephone conversations and

correspondence that Mr. Giovanni di Vaio, the Reader's Digest Vice-President for International Human Resources, was engaged on November 20, 2003, in a bona fide independent examination of the merits of plaintiff's claim that he was the victim of unlawful discrimination. Mr. di Vaio said, in a letter of that date, "I can promise that I will look into your case with great attention" and asked the plaintiff to provide him with a "translation of the termination letter." Exhibit 2. In fact, as the extensively redacted documents attached hereto as Exhibit 3 demonstrate, Mr. di Vaio not only misrepresented his own state of mind to the plaintiff, but had requested, and may already have received, a translation of the letter from the Reader's Digest personnel in Europe. Mr. di Vaio even submitted his draft of the letter to the Swiss personnel for their prior approval. Hence even with respect to Mr. di Vaio's correspondence, the key witnesses will come from Europe.

In short, virtually all the probative witnesses in this case will be traveling to the United States from Europe. It is as easy for them to fly to Dulles Airport as to John F. Kennedy Airport. There is no greater convenience in having this case proceed in the Southern District of New York than in the District of Columbia.

**E.     Nearly All the Relevant Documents Will Come from Europe.**

The documentary evidence is all in Zurich and Stuttgart. The defendant will have to send its documents from their European locations. The plaintiff will similarly have to produce whatever documentation he may have from Zurich. To the extent that some additional documentation may be required from Reader's Digest headquarters in New York, it can either be transported to the District of Columbia or, by agreement of counsel, plaintiff's counsel can examine it at the corporate headquarters in New York. The case need not be transferred to New York because of these additional documents.

## III.

## THE PUBLIC-INTEREST FACTORS
## FAVOR THE DISTRICT OF COLUMBIA

The public-interest factors are: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferee and the transferor courts; and (3) the local interest in deciding local controversies at home. *Sheldon v. National Passenger Railroad Corporation*, 355 F. Supp. 2d 174, 178 (D.D.C. 2005), quoting from *Berenson v. Nat'l Fin. Serv., LLC*, 319 F. Supp. 2d 1, 4 (D.D.C. 2004).

### A.     This Court Is Familiar With the Applicable Law.

The principal body of law applicable to this case is the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. This Court is as familiar with that law as any court in the Southern District of New York. There may, in addition, be issues raised under Swiss law. This Court can familiarize itself with those legal principles as easily as a court in the Southern District of New York. Indeed, the presence within the District of Columbia of the Embassy of Switzerland will make it easier to obtain access to authorities on Swiss law in this District than in the Southern District of New York.

The defendant asserts that an issue of New York law may arise with respect to the Third Claim in the complaint. Defendant's Memorandum, p. 10. Whether or not that claim will be affected by New York law is, at present, uncertain since the contract with which the defendant interfered was a Swiss contract. Issues of Swiss law may be more pertinent to this claim than issues of New York law. But even if this Court were presented, on this relatively minor aspect of this litigation, with an issue of New York law, the issue would be a simple one that could be readily decided by this Court in light of New York precedents. *Shenandoah Associates Ltd. Partnership v. Tirana*, 182 F. Supp. 2d 14, 26 (D.D.C. 2001) ("the court applies Virginia law to

the instant case" but denies transfer under Section 1404(a)). This application of New York law would not warrant transfer of the entire case to the Southern District of New York.

**B.      The Calendars of Judges in the Southern District of New York Are More Congested Than the Calendars of Judges of the District of Columbia.**

A compelling public-interest factor that warrants retaining this case in the District of Columbia emerges from a comparison the dockets of the United States District Judges in the District of Columbia and those in the Southern District of New York. Exhibit 4 to this Memorandum is the comparable "Judicial Caseload Profiles" for both courts taken from the official report issued by the Office of the United States Courts. The total number of civil-case filings per judge in the District of Columbia for the calendar year that ended on September 30, 2004, was 163. The comparable figure per judge for the Southern District of New York was 388 – more than double the caseload of the District of Columbia. The per-judge average of "Pending Cases" in the District of Columbia was 295; in the Southern District of New York it was 630 – again more than double.

There can be no question that the Southern District of New York is more "congested" than the District of Columbia. A plaintiff who wants to proceed expeditiously with his claim – as an unemployed 59-year-old who has suddenly been deprived of his livelihood should have a right to do – can secure more efficient justice in the District of Columbia than he can in the Southern District of New York. And, by the same token, the heavy docket of a judge in the Southern District of New York should not be unnecessarily increased by assigning to him an age-discrimination case that has no true relation to New York and that would only be added to his docket to increase slightly the convenience of a huge international corporation that can surely afford to present its defense to a court in the District of Columbia.

C.      **There Is No "Local Interest" Anywhere But Zurich.**

The only "local interest" in this case is in Zurich, Switzerland. There is no United States District Court, therefore, which has any "local interest" in trying this case. The District of Columbia is as appropriate a court as the Southern District of New York.

## CONCLUSION

For the above reasons, the defendant's Motion To Transfer Venue should be denied.

Dated: October 12, 2005                           Respectfully submitted,

                                                  _____
                                                  NATHAN LEWIN (D.C. Bar No. 38299)
                                                  ALYZA D. LEWIN (D.C. Bar No. 445506)
                                                  **LEWIN & LEWIN, LLP**
                                                  1828 L Street, N.W., Suite 901
                                                  Washington, D.C. 20036
                                                  (202) 828-1000
                                                  (202) 828-0909 fax

                                                  *Attorneys for Plaintiff*