UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Dov Levine,<br><br>             Plaintiff,<br><br>     v.<br><br>The Reader's Digest Association, Inc.,<br><br>             Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action: 1:05-cv-01163 (RMC) |

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO TRANSFER VENUE**

PROSKAUER ROSE LLP

Howard L. Ganz (Admitted *Pro hac vice*)
Avitai Gold (Admitted *Pro hac vice*)
1585 Broadway
New York, New York 10036
(212) 969-3035

*Of Counsel:*
Stephanie L. Marn (D.C. Bar No. 467873)
1233 Twentieth Street, NW, Suite 800
Washington, DC 20036
Telephone: (202) 416-6800

Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................. 2

A.   Transfer To The Southern District Of New York Will Promote The
     Convenience Of The Parties And Witnesses And Is In The Interest Of Justice. ................. 2

  1.   The Witnesses And Documents Relevant As To Whether Plaintiff
       May Even Pursue A Claim Under The Age Discrimination In
       Employment Act And As To Whether RDA Retaliated Against
       Plaintiff And/Or Tortiously Interfered With Plaintiff's Contract
       With Das Beste Aus Reader's Digest A.G. Are Located Either
       In New York Or Europe, And *Not* In The District Of Columbia. ............................ 2

       a.   The Threshold ADEA Issue ........................................................................... 3

       b.   The Retaliation And Tortious Interference Claims ........................................ 4

  2.   Plaintiff's Choice Of Forum Is Not Entitled To Any Significant Weight. ................. 6

  3.   The Convenience Of Plaintiff's Counsel Is Not Entitled
       To Weight On This Motion. ........................................................................................ 7

B.   Public Interest Factors Militate In Favor Of Transfer. ........................................................ 8

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*BPA Int'l, Inc. v. Sweden,*
    281 F. Supp. 2d 73 (D.D.C. 2003) ................................................................... 3

*\*Claasen v. Brown,*
    No. Civ. A. 94-1018, 1996 WL 79490 (D.D.C. Feb. 16, 1996) .......................... 7

*\*DeLoach v. Philip Morris Cos.,*
    132 F. Supp. 2d 22 (D.D.C. 2000) ................................................................... 7

*\*Denty v. SmithKline Beecham Corp.,*
    907 F. Supp. 879 (E.D. Pa. 1995) .................................................................... 3

*Iwata v. Stryker Corp.,*
    59 F. Supp. 2d 600 (N.D. Tex. 1999) .............................................................. 4

*Johnson v. Aramco Servs. Co.,*
    134 Fed. Appx. 666 (5th Cir. 2005) ................................................................. 3

*\*Liban v. Churchey Group II, LLC,*
    305 F. Supp. 2d 136 (D.D.C. 2004) ................................................................. 7

*\*McClamrock v. Eli Lilly & Co.,*
    267 F. Supp. 2d 33 (D.D.C. 2003) ................................................................ 6, 7

*Reiffin v. Microsoft, Corp.,*
    104 F. Supp. 2d 48 (D.D.C. 2000) ................................................................... 7

*Schmid Labs., Inc. v. Hartford Accident & Indem. Co.,*
    654 F. Supp. 734 (D.D.C. 1986) ..................................................................... 9

*Schmidt v. Am. Inst. of Physics,*
    322 F. Supp. 2d 28 (D.D.C. 2004) ................................................................... 9

*\*Trout Unlimited v. U.S. Dep't of Agric.,*
    944 F. Supp. 13 (D.D.C. 1996) .................................................................... 9, 10

## STATUTES

28 U.S.C. § 1404(a) ............................................................................................... 1

29 U.S.C. § 621 *et seq* ......................................................................................... 2

29 U.S.C. § 623(h)(2) .......................................................................................... 3, 4

**PRELIMINARY STATEMENT**

As plaintiff's papers in opposition to this motion to transfer themselves make clear, this action has nothing at all to do with the District of Columbia. Because his claims are based upon the termination of his 31-year employment, *in Switzerland*, by the Swiss subsidiary of defendant The Reader's Digest Association, Inc. ("RDA"), plaintiff's cause of action clearly did not arise in the District of Columbia. Plaintiff does not identify *any* potential witness who is located in this District; and he does not even suggest that there is *any* document housed in the District of Columbia that might have relevance to his claims. Nor, indeed, is there even any contention that litigating this matter in the District of Columbia, rather than in the Southern District of New York, would be more convenient *for the plaintiff himself.*[1]

To the contrary, the gravamen of plaintiff's opposition to transfer is that the District of Columbia is a more convenient forum *for his attorney.* Although (as more fully explained below), RDA has reason to doubt that litigating this matter in the Southern District of New York would be as inconvenient for plaintiff's counsel as is suggested, the convenience of counsel is simply not, under controlling case law, a legitimate basis for denying the motion to transfer - especially where, as here, transfer to the Southern District of New York would clearly convenience RDA and its witnesses, while inflicting no inconvenience on plaintiff himself.

Accordingly, we respectfully submit, RDA's motion to transfer this action to the Southern District of New York should be granted.[2]

---

[1] Plaintiff does, to be sure, assert that it would be just as convenient for RDA witnesses from Europe to fly to Dulles rather than Kennedy. But, of course, the reverse is equally true with respect to plaintiff himself.

[2] There is no dispute that this is an action that "might have been brought" in the Southern District of New York within the meaning of 28 U.S.C. § 1404(a). *See* Defendant's Memorandum of Law in Support of Motion to Transfer Venue ("Def. Br."), at 3-4.

## ARGUMENT

A.    **Transfer To The Southern District Of New York Will Promote The Convenience Of The Parties And Witnesses And Is In The Interest Of Justice.**

1.    **The Witnesses And Documents Relevant As To Whether Plaintiff May Even Pursue A Claim Under The Age Discrimination In Employment Act And As To Whether RDA Retaliated Against Plaintiff And/Or Tortiously Interfered With Plaintiff's Contract With Das Beste aus Reader's Digest A.G. Are Located Either In New York Or Europe, And *Not* In The District Of Columbia.**

In his Memorandum in Opposition to Defendant's Motion to Transfer Venue ("Pl. Br."), plaintiff conclusorily asserts that "virtually all of the probative witnesses" and "all" of the documentary evidence are located in Europe. (Pl. Br. at 10). Even assuming the correctness of this assertion, such a circumstance would not, of course, establish the requisite (or even any) connection to the District of Columbia. But, more importantly, the assertion is demonstrably incorrect for two principal reasons.

First, although we do not dispute the assertion that the witnesses most familiar with plaintiff's job performance as an employee of Das Beste aus Reader's Digest A.G. are based in Europe, plaintiff has ignored the existence of a threshold issue – *i.e.*, whether the prohibitions of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), are applicable at all to conduct allegedly engaged in by that foreign corporation. And, as ordinary logic would suggest, the witnesses and documentary evidence relevant to this issue are located predominantly in New York, where RDA maintains its headquarters, and perhaps, to some extent, in Europe – but certainly not at all in the District of Columbia.[3]

---

[3]    Plaintiff does not dispute the facts, as set forth in RDA's moving papers, that there are only four employees based in RDA's District of Columbia office (out of a total workforce of over 4,000), and that this office performs editorial functions that are entirely unrelated to the work done by plaintiff while he was employed by Das Beste aus Reader's Digest A.G. *See* Declaration of Michael A. Brizel ("Brizel Decl.") ¶ 7; Def. Br. at 6.

2

Second, as both the complaint and the papers filed in opposition to this motion make clear, plaintiff's claims of retaliation and tortious interference with contract are based upon assertions concerning the alleged conduct of RDA personnel who were employed *at RDA's corporate headquarters in New York.*

### a.    The Threshold ADEA Issue

In this action, plaintiff seeks to hold RDA, a United States corporation headquartered in Pleasantville, New York, responsible for conduct allegedly engaged in by Das Beste aus Reader's Digest A.G. in Switzerland that is claimed to have violated the ADEA. There is no dispute that Das Beste aus Reader's Digest A.G. is a corporation whose place of incorporation is in a foreign country and, accordingly, a "foreign person" within the meaning of the ADEA. And the prohibitions set forth in the ADEA simply do not apply – *i.e.*, the ADEA may not be given extraterritorial effect – "where the employer is a foreign person not controlled by an American employer." 29 U.S.C. § 623(h)(2). *See also Denty v. SmithKline Beecham Corp.*, 907 F. Supp. 879, 883 (E.D. Pa. 1995) ("American citizens working abroad for companies not controlled by American companies are not protected because the practices of such companies are not covered by the ADEA.")

In its answer to plaintiff's complaint, RDA, by its assertion of a lack of subject matter jurisdiction, has put at issue the question whether it has or exercised the requisite degree of control so as to enable plaintiff to attempt to hold RDA responsible for conduct by its Swiss subsidiary alleged to violate the ADEA.[4] And, as the statute itself makes perfectly clear, this

---

[4]    *See* Answer ¶ 53. *See, e.g., Johnson v. Aramco Servs. Co.*, 134 Fed. Appx. 666, 667-69 (5th Cir. 2005) (dismissed for lack of subject matter jurisdiction where employment agency found not to control foreign corporation). Further, plaintiff has the burden to prove that subject matter jurisdiction exists over his ADEA claims. *See, e.g., BPA Int'l, Inc. v. Sweden*, 281 F. Supp. 2d 73, 79 (D.D.C. 2003) (Collyer, J.) (dismissed on grounds of forum non conveniens; this Court declared that Rule 12(b)(1) "provides that a party may raise by motion the threshold defense of lack of subject matter jurisdiction. Once subject matter jurisdiction is challenged, the plaintiff has the burden of establishing the jurisdictional facts by competent

threshold issue will require an analysis of factors – including, for example, the "interrelation of operations" and "centralized control of labor relations" – that are decidedly fact intensive. *See* 29 U.S.C. § 623(h)(3). It is, we submit, obvious that whether there may be, as between RDA and Das Beste aus Reader's Digest A.G., the requisite "interrelation of operations" and/or "centralized control of labor relations" are questions as to which only witnesses from RDA headquarters in New York and documents maintained by RDA in New York, or, perhaps, Swiss witnesses and documents – *but in no event witness or documents from the District of Columbia* – can provide the answer.[5]

### b.     The Retaliation And Tortious Interference Claims

The allegations advanced by plaintiff in connection with his retaliation and tortious interference claims leave little doubt that individuals employed by RDA in New York will be critical witnesses in this case.

For example, the complaint asserts that, in retaliation for plaintiff's assertion of rights under United States law, "defendant" – *i.e.*, RDA – "directed its subsidiary to withhold

---

proof."); *see also Iwata v. Stryker Corp.*, 59 F. Supp. 2d 600, 602 (N.D. Tex. 1999) (dismissed for lack of subject matter jurisdiction because ADEA did not apply to non-U.S. citizen working abroad for U.S. employer). In *Iwata*, the court stated that "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.... Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* at 602.

[5]     *See* Reply Declaration of Howard L. Ganz ("Ganz Reply Decl.") ¶ 7. The question whether RDA exercised the requisite degree of control over Das Beste aus Reader's Digest A.G. is not, of course, at issue on this motion. It deserves note, however, that there are assertions in plaintiff's brief in opposition to RDA's motion to transfer that are at odds with the notion that there was an "interrelation of operations" or the "centralized control of labor relations" which are essential to a finding of the requisite control. Thus, for example, plaintiff says that "there is no suggestion that, prior to the initial notification given to the plaintiff regarding termination of his employment, *anyone* at the defendant's headquarters was involved in evaluating plaintiff's job performance." (Pl. Br. at 2) (Emphasis added.)  Moreover, according to plaintiff, those who "made the decision" to terminate his employment were, "at all relevant times" based in Europe. (Pl. Br. at 7)  Indeed, contrary to the notion that RDA officials in New York were controlling the conduct of Das Beste aus Reader's Digest A.G. with respect to plaintiff, plaintiff's brief refers to the "purportedly 'independent' judgments being made by Reader's Digest officers in New York at the time plaintiff was discharged," and goes on to suggest that those "purportedly 'independent' judgments" were, in fact, "being cleared and approved by the defendant's European personnel before they were sent to the plaintiff." (Pl. Br. at 9)

4

payment" of monies allegedly due plaintiff under an agreement between plaintiff and Das Beste aus Reader's Digest A.G. (Complaint ("Compl.") ¶ 41) Similarly, the complaint alleges that, again in order to retaliate against plaintiff, "defendant" – *i.e.*, RDA – "directed its Swiss subsidiary" to appeal from an initial Swiss court judgment in plaintiff's favor.[6] (Compl. ¶ 44)

In addition, plaintiff's interference with contract claim depends on the notion that RDA personnel – again, at its New York corporate headquarters – interfered with the purported agreement between plaintiff and Das Beste aus Reader's Digest A.G. Thus, according to the complaint, it was "[d]efendant's" – *i.e.,* RDA's – "acts in preventing Das Beste aus Reader's Digest" from making payment pursuant to that agreement that constituted the unlawful interference. (Compl. ¶ 48)[7]

Moreover, the exhibits attached to the papers filed by plaintiff in opposition to this motion also demonstrate that RDA personnel in New York are likely to be witnesses in this case. There were, for example, communications, apparently by both telephone and letter, between the plaintiff himself and an RDA human resources official based in New York, and, indeed, correspondence between plaintiff's counsel and that same New York-based RDA official. (*See* Pl. Br., Ex. 2) And plaintiff himself calls attention to various e-mail messages exchanged between this human resources official and others based at RDA headquarters in Pleasantville, New York. (*See* Pl. Br., Ex. 3)[8]

---

[6] That initial judgment in plaintiff's favor was reversed by a Swiss court, which held on June 21, 2005 that the purported contract with which plaintiff claims RDA interfered never existed. Plaintiff has appealed that decision. *See* Ganz Reply Decl. ¶ 8.

[7] Plaintiff argues that even if "the decision to interfere . . . was made from Reader's Digest headquarters in New York, the actual interference occurred in Switzerland." (Pl. Br. at 5-6) Whatever merit (if any) there may be in this characterization, and wherever the effects of the supposed interference may have been felt, the facts, as plaintiff alleges them, are that it was RDA personnel in New York who engaged in conduct that resulted in those asserted effects.

[8] As noted in our initial Memorandum, both plaintiff and his attorney directed their protests about the termination of plaintiff's employment to RDA employees in New York; and it was the New York office of

5

Based upon the foregoing, it is, we submit, clear that the most significant sources of proof concerning the applicability of the ADEA and plaintiff's claims of retaliation and tortious interference are located at RDA's corporate headquarters in Pleasantville, New York. This being so, and especially because there are not even alleged to be any sources of proof located in the District of Columbia, this action should be transferred to the Southern District of New York.

**2.    Plaintiff's Choice Of Forum Is Not Entitled To Any Significant Weight.**

As set forth in RDA's moving brief, a plaintiff's choice of venue does not deserve deference when he has failed to demonstrate the existence of any link between his action and the forum he has selected. (Def. Br. at 5-7) And that is precisely the circumstance here.

The District of Columbia is, obviously and concededly (Pl. Br. at 2, 5), *not* plaintiff's "home" forum, and plaintiff has not asserted that a single relevant witness, document, or other source of proof relevant to this action is located in this District. This being so, RDA's burden on the instant motion is considerably diminished. *See, e.g., McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 37 (D.D.C. 2003) ("[T]he defendant's burden in a motion to transfer decreases when the plaintiff's choice of forum has no meaningful nexus to the controversy and the parties.")

Plaintiff's argument that deference is denied to a plaintiff's choice of forum only where the proposed transferee forum is one with "substantial ties" to the controversy "and where the subject matter of the lawsuit is connected to that state" (Pl. Br. 4-5) is without merit. Although, to be sure, some motions to transfer are based on closer connections between the underlying dispute and the proposed transferee forum than others, none of the cases cited by

---

the Equal Employment Opportunity Commission that processed (and dismissed) plaintiff's charge of discrimination. *See* Def. Br. at 7.

6

plaintiff suggests that the reduced deference to plaintiff's choice of forum is somehow dependent upon the strength of that connection.

In *McClamrock*, for example, the court accorded little deference to plaintiff's choice of forum precisely because there was no factual nexus to this District, and it granted the motion to transfer even though the defendant did not reside in the transferee district and only "some" of the evidence was located there. *McClamrock*, 267 F. Supp. 2d at 37. Similarly, in *DeLoach v. Philip Morris Cos.*, 132 F. Supp. 2d 22, 26 (D.D.C. 2000), this Court declared that "the most persuasive factor supporting the appropriateness of transfer is the fact that, *regardless of whether North Carolina is the perfect jurisdiction in which the action should proceed*, it is far superior to [this District], which has at best a very attenuated connection to this lawsuit." (Emphasis added.)

Here, of course, plaintiff cannot and does not assert that his claims have even some attenuated connection to this District. Indeed, there is no dispute that there is no such connection at all. Accordingly, and because (as demonstrated above), there are significant sources of proof in the Southern District of New York, RDA's motion to transfer should be granted.

**3.    The Convenience Of Plaintiff's Counsel Is Not Entitled To Weight On This Motion.**

As set forth in RDA's moving brief, that a particular forum may be more convenient for plaintiff's counsel is not a legitimate basis for denying a motion to transfer. (Def. Br. at 6-7); *see, e.g.*, *Claasen v. Brown*, No. Civ. A. 94-1018, 1996 WL 79490, at *6 (D.D.C. Feb. 16, 1996); *Liban v. Churchey Group II, LLC*, 305 F. Supp. 2d 136, 142 (D.D.C. 2004) ("the location of counsel carries little, if any, weight in an analysis under § 1404(a)") (*quoting Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52, n.7 (D.D.C. 2000).

Whatever minimal weight might, in some circumstances, be given to the convenience of plaintiff's counsel, the facts here do not justify the consideration of this factor. Indeed, they suggest that the transfer of this case to the Southern District of New York would not cause any significant inconvenience to plaintiff's counsel.

First, plaintiff's counsel has acknowledged that he is a member of the Bar of the Southern District of New York, and it appears that he has been admitted to practice generally in the State of New York. (*See* Declaration of Nathan Lewin ("Lewin Decl.") ¶ 8; Ganz Reply Decl. ¶ 2, Ex. A) More importantly, perhaps, plaintiff's counsel has, in fact, been identified as appearing in both the Southern District and the New York State courts in recent months. (*See* Ganz Reply Decl. ¶ 3, Ex. B)

Second, plaintiff's counsel is a member of the adjunct faculty at Columbia University School of Law, which is located within the Southern District of New York, and is scheduled to teach a course every Wednesday during the upcoming spring semester. (Ganz Reply Decl. ¶ 4, Ex. C)

In sum, it appears that plaintiff's counsel has been (and will continue to be) a regular visitor to the Southern District of New York, and thus will not suffer significant inconvenience if this matter is transferred to the Southern District.

**B.     Public Interest Factors Militate In Favor Of Transfer.**

The public interest factors applied by courts in this District support the transfer of this action.

First, noting that Swiss law may have relevance to this action, plaintiff argues that "the presence within the District of Columbia of the Embassy of Switzerland will make it easier to obtain access to authorities on Swiss law in this District than in the Southern District of New

York." (Pl. Br. at 11)  Plaintiff cites no authority in support of this proposition; and, in any event, the argument is without merit.  Because the Swiss Embassy makes the full text of various Swiss legal authorities available on its website, the Embassy's physical location is irrelevant. (*See* Ganz Decl. ¶ 5, Ex. D)  Moreover, the Swiss government maintains both a Consulate General's office and a Permanent Mission to the United Nations within the Southern District of New York.  (Ganz Decl. ¶ 6, Ex. E)  Accordingly, RDA is confident that, to the extent Swiss law is at all applicable to claims asserted by plaintiff, the parties can obtain any relevant authorities as easily in New York as they could in this District.

Second, in the context of motions to transfer venue under Section 1404(a), courts in this District have consistently held that, in furtherance of judicial economy, it is preferable to have a federal court in the proposed transferee forum, rather than a court in this District, decide questions that arise under the laws of the state in which the transferee court is located.  *See, e.g.*, *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996) (the public interest is "best served by having a case decided by the federal court in the state whose law governs the interests at stake"); *see also Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 35 (D.D.C. 2004) ("The District of Maryland is 'surely more familiar' than this court with the application of Maryland law") (citation omitted); *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*, 654 F. Supp. 734, 737 n. 11 (D.D.C. 1986) (There is a "benefit of having a local court construe its own law.")  Thus, to the extent New York law may apply to plaintiff's interference with contract claim because of conduct in which RDA personnel in New York purportedly engaged, transfer of this action to New York is warranted.

Finally, there is, we respectfully submit, no basis for plaintiff's assertion that he "can secure more efficient justice" here than in the Southern District of New York.  (Pl. Br. at

12) To be sure, the "judicial caseload" data plaintiff himself has appended to his papers (Pl. Br., Exhibit 4) shows that, as of September 30, 2004, there were more civil-case filings per judge and more pending cases per judge in the Southern District of New York than in the District of Columbia. But that same data also shows that, on average, cases achieve closure more rapidly in the Southern District of New York. According to plaintiff's Exhibit 4, the median time from filing to the disposition of civil cases in the Southern District of New York was 8.1 months (compared to 10.3 months in this District); and the median time from filing to trial in the Southern District of New York was 26.8 months (compared to 27.4 here).

Accordingly, the factor of "court congestion" is (as stated in RDA's moving brief) neutral with respect to the instant motion, because it is "not evident that a transfer … will lead to unnecessary delay." *Trout*, 944 F. Supp. at 19; Def. Br. at 11.

For the reasons stated above and in RDA's original moving papers, the public-interest factors favor transfer of this proceeding to the Southern District of New York.

## CONCLUSION

This proceeding should be transferred to the United States District Court for the Southern District of New York because venue is proper in that district, and transfer would fully serve the interests of justice and the convenience of the parties and the witnesses.

Dated: October 19, 2005

Respectfully submitted,

PROSKAUER ROSE LLP

By: **/s/ Howard L. Ganz**
Howard L. Ganz (Admitted *Pro hac vice*)
Avitai Gold (Admitted *Pro hac vice*)
1585 Broadway
New York, New York 10036
(212) 969-3035

*Of Counsel:*
Stephanie L. Marn (D.C. Bar No. 467873)
1233 Twentieth Street, NW, Suite 800
Washington, DC 20036
Telephone: (202) 416-6800

Attorneys for Defendant