## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOV LEVINE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-1163 (RMC)** |
| ) | |
| **THE READER'S DIGEST** ) | |
| **ASSOCIATION, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### ORDER ON MOTION TO TRANSFER VENUE

Plaintiff Dov Levine had been employed in Switzerland by Das Beste aus Reader's

Digest A.G. for 31 years when he unexpectedly received a letter terminating his employment.  His

former employer is a wholly owned subsidiary of The Reader's Digest Association, Inc. ("RDA"),

which is headquartered and maintains its principal place of business in Pleasantville, New York.

Represented by his cousin, a lawyer in Washington, D.C., Dr. Levine brought suit in this Court for

violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and

for unlawful retaliation and interference with contract rights.  RDA has moved to transfer venue to

the Southern District of New York, which all parties agree is a forum in which this action might have

been brought.  Df.'s Mem. at 1, 4; Pl.'s Mem. at 2; *see Sharp Elecs. Corp. v. Hayman Cash Register*

*Co.*, 655 F.2d 1228, 1230 (D.C. Cir. 1981) (holding that the district court must decide, as a

preliminary matter, that venue and jurisdiction would be proper as to all defendants in the transferee

forum).  Dr. Levine opposes transfer.

Finding that the District of Columbia has no connection to any of the events at issue

and no relevant relationship to either of the parties, while the Defendant and some likely witnesses

and records are located in New York, the Court grants RDA's motion and transfers the action to the Southern District of New York.

## I. LEGAL STANDARDS

Motions to change venue are governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The D.C. Circuit " 'has said that it is perhaps impossible to develop any fixed general rules on when cases should be transferred.' " *SEC v. Savoy Industs., Inc. v. Zimmerman*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Starnes v. McGuire*, 512 F.2d 918, 929 (D.C. Cir. 1974) (en banc)).  "Thus, the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness."  *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Section 1404(a) is rooted in the earlier doctrine of *forum non conveniens*. *Id.* at 1154. Although courts have "more discretion to transfer under § 1404(a) than they ha[ve] to dismiss on grounds of *forum non conveniens*," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981), they are guided by similar factors in both contexts — namely, the private and public interests at stake.  *See Savoy Industs.*, 587 F.2d at 1154.  As this Court has explained,

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . , but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Thayer/Patricof Educ. Funding LLC v. Pryor Res.*, 196 F. Supp. 2d 21, 31-32 (D.D.C. 2002)

(omission in original).  The party seeking transfer generally bears the burden of demonstrating that the balance of convenience of the parties and witnesses and the interest of justice are in its favor. *Id.* at 31; *see Savoy Industs.*, 587 F.2d at 1154 (describing the district court's denial of a motion to change venue as a ruling that the movant "had failed to shoulder his burden").

## II. ANALYSIS

Certain facts are not in dispute.  Although Dr. Levine is a U.S. citizen, he resides in Switzerland and not in the District of Columbia.  None of the conduct or events leading to this suit occurred in D.C.  No potential witness lives or works in D.C.  None of the potentially relevant documents is located in D.C.  When protesting his termination, Dr. Levine and his counsel both communicated with RDA personnel in New York and not in D.C.[1]  And Dr. Levine's administrative charge of employment discrimination was filed in New York and investigated by the Equal Employment Opportunity Commission's New York office.  Df.'s Mem. at 2.

Dr. Levine argues that he would be greatly inconvenienced by transfer to New York because he is an individual of modest means; he is represented by his cousin, for familial reasons, on a contingent-fee basis; and he would have great difficulty retaining other counsel to represent him in the United States.  Decl. of Nathan Lewin ¶¶ 5-7.  Dr. Levine specifically notes that his attorney, the senior member of a two-person D.C. law firm, would face significant hardship if this case were transferred to New York.  *Id.* ¶ 8.  He further argues that because his claim arose in Switzerland, where he resides, there is no factual nexus to — or local interest in — *any* particular U.S. judicial district.  Nearly all documents and witnesses, he submits, will come from Europe, and it is no less convenient to fly into Washington, D.C., than into New York City.  Under such circumstances, he

---

[1]  RDA has a four-person research office in the District of Columbia.

argues that the Court should defer to his choice of forum. Pl.'s Mem. at 3; *see, e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Finally, he suggests that his case would progress more quickly here than in New York.

### A. Private Interest Factors

Several private interest factors bear upon the decision on a motion to transfer venue under § 1404(a), including (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Thayer/Patricof*, 196 F. Supp. 2d at 31-32. The parties debate at length how these factors impact the situation here. However, because the central facts arose abroad, many of these factors become neutral upon analysis.

As Dr. Levine notes, in balancing the interests, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft*, 454 U.S. at 255. However, as he also recognizes, this Court has not applied the usual measure of deference to a plaintiff's forum choice where that forum has no nexus to the controversy and no particular interest in the parties or the subject matter. Pl.'s Mem. at 4; *see, e.g.*, *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 37 (D.D.C. 2003); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996). In fact, this Court has held that, under such circumstances, "the defendant's burden in a motion to transfer decreases." *McClamrock*, 267 F. Supp. 2d at 37.

What the Court cannot escape is that the District of Columbia has *no* relationship to anything about this case except that Dr. Levine's counsel has his office here. Even that fact is

undermined by the facts that counsel is admitted to the Bar of New York and to the Southern District; that he has actually litigated cases in the Southern District; and that he is an adjunct professor at Columbia University Law School in New York City, where he will be journeying at least once a week for the spring semester in 2006. This Court has previously given the convenience of counsel, as opposed to that of parties and witnesses, less weight in the balance. *See, e.g.*, *McClamrock*, 267 F. Supp. 2d at 40 (noting that inconvenience to counsel "is not a factor that carries considerable weight"); *Claasen v. Brown*, Civil Action No. 94-1018 (GK), 1996 WL 79490, at *6 (D.D.C. Feb. 16, 1996) (considering inconvenience to counsel "of relatively minor importance" among other factors). Under these circumstances, even if the Court were otherwise to accord Dr. Levine's choice of forum greater weight because without his cousin's representation Dr. Levine would be greatly inconvenienced, the Court finds it appropriate to discount this factor in view of the lack of any factual nexus to the District of Columbia.

Moreover, although many witnesses and documents are surely located in Europe, it is less clear whether, as Dr. Levine asserts, that is true of "nearly" or "virtually" all of them. Pl.'s Mem. at 9. In fact, Dr. Levine appears to acknowledge that (1) at least some witnesses are located in New York, *id.* at 9 (discussing "the purportedly 'independent' judgments being made by Reader's Digest officers in New York at the time plaintiff was discharged"); (2) at least some relevant documents are located in New York, *id.* at 10 ("To the extent that some additional documentation may be required from Reader's Digest headquarters in New York, it can either be transported . . . or . . . examine[d] . . . in New York."); and (3) New York law may apply to his contract claim, *id.* at 11 (noting "uncertain[ty]" as to whether New York law applies). Thus, while trial in D.C. or the Southern District would be equally convenient in terms of European witnesses and documents, the

-5-

facts that RDA is located in New York, that some RDA witnesses from New York will be necessary

to the litigation,[2] that such records as are in the United States that are relevant to the dispute are in

New York,[3] and that New York law may apply to the contract claim, together weigh decidedly in

favor of transfer to the Southern District.

**B. Public Interest Factors**

The public interest factors are neutral or weigh slightly in favor of transferring venue

to the Southern District. First, although the Court has no reason to believe that the courts in the

Southern District have any greater expertise in trying ADEA cases, there is, as mentioned above,

uncertainty over whether and to what extent New York law applies; if it does, there would be at least

some benefit in having a local court construe its own law. *See Gulf Oil*, 330 U.S. at 509; *Schmid

Labs., Inc. v. Hartford Accid. & Indem. Co.*, 654 F. Supp. 734, 737 n.11 (D.D.C. 1986). Next, as

to the relative congestion of the two courts, the Court disagrees with Dr. Levine's assertion that "his

case will progress much more quickly in this District than in the Southern District." Pl.'s Mem. at

2. A review of federal court management statistics indicates that, in 2004, civil cases pending in the

Southern District proceeded to disposition or trial somewhat more quickly than those in the District

of Columbia, despite this Court's docket being less crowded, with fewer pending cases and weighted

filings. Federal Court Management Statistics, U.S. District Court Judicial Caseload Profiles, *at*

---

[2] RDA witnesses can be anticipated in two ways. First, some New York executives may be fact witnesses to the termination and dispute over terms of separation. Second, New York executives will clearly be relevant to determining whether the relationship between RDA and Das Beste aus Reader's Digest A.G. is such that the ADEA covered Dr. Levine's employment. The Court intimates no opinion on the point, argued in the parties' papers, and will leave the substantive interpretation of the ADEA and the facts to the transferee court.

[3] The parties have extensively briefed these issues. The last remaining motion, the Defendant's Motion for Leave to File Supplemental Memorandum, is granted.

http://www.uscourts.gov/cgi-bin/cmsd2004.pl (last visited Dec. 8, 2005); *see Savoy Industs.*, 587 F.2d at 1156 ("[Although] congestion alone is not sufficient reason for transfer, . . . relative docket congestion and potential speed of resolution is an appropriate factor to be considered." (citation omitted)). Finally, the Court disagrees with Defendants' assertion that "[t]he only 'local interest' in this case is in Zurich, Switzerland." Pl.'s Mem. at 13. Surely the citizens of New York have an interest in ensuring that a business located in their State complies with the ADEA and local law.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Defendant has demonstrated that the balance of convenience of the parties and witnesses and the interest of justice weigh in favor of transferring venue to the Southern District of New York. *See Thayer/Patricof*, 196 F. Supp. 2d at 31; *McClamrock*, 267 F. Supp. 2d at 37; *Savoy Industs.*, 587 F.2d at 1154. Accordingly, it is hereby

**ORDERED** that Defendant Reader's Digest Association Inc.'s Motion for Leave to File Supplemental Memorandum [Dkt. #14] is **GRANTED**; and it is

**FURTHER ORDERED** that Defendant Reader's Digest Association Inc.'s Motion to Transfer Venue [Dkt. #8] is **GRANTED**; and it is

**FURTHER ORDERED** that this action is **TRANSFERRED** to the Southern District of New York.

**SO ORDERED**.

Date: December 12, 2005                    _____/s/_____
                                          ROSEMARY M. COLLYER
                                          United States District Judge

-7-